FILED

IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF VIRGINIA
Richmond Division

2010 SEP 24  P 3: 08

| | |
|---|---|
| DE'ONTRA JOHNSON, )<br>)<br>Plaintiff, )<br>)<br>)<br>)<br>)<br>v. )<br>)<br>)<br>)<br>)<br>SEAN M. BROOMELL, )<br>)<br>Defendant ) | Civil Action No. 3:10cv680 |

# COMPLAINT

Plaintiff De'Ontra Johnson, by counsel, respectfully represents unto the Court as follows:

*Jurisdiction and Venue*

1. This is a civil action brought under 42 U.S.C. §§ 1983, 1988 and the Fourth and Fourteenth Amendments to the Constitution of the United States, and under the common law of the Commonwealth of Virginia. Plaintiff is seeking monetary damages against the defendant for actions taken under the color of state law which violated the plaintiff's constitutional rights.

2. Jurisdiction over Count I, below, is proper pursuant to 28 U.S.C. § 1331 and 1343(a), and supplemental jurisdiction of Counts II and III below is appropriate under 28 U.S.C. § 1367. Venue is proper in this Court pursuant to 28 U.S.C. § 1391.

*Parties*

3. Plaintiff De'Ontra Johnson ("Johnson") is a twenty-five year old female who currently resides in the City of Richmond, Virginia.

4. During all times mentioned herein, defendant Sean M. Broomell ("Broomell") was employed by Henrico County as a Henrico County police officer.

*Facts*

5. On the evening of September 26, 2008, Broomell, while on duty and traveling alone in his marked Henrico County Police car, performed a routine traffic stop after allegedly witnessing Johnson committing the traffic infraction of running a red light.

6. At no time during the entirety of the following events did Johnson threaten, harass or take any action towards Officer Broomell which could have caused the officer a reasonable apprehension or fear of harm.

7. After Johnson stopped her car, Broomell disembarked from his car and then aggressively approached Johnson, shouting at Johnson, with use of profanity, for her to get out of her car. Broomell shined a flashlight at Johnson with one hand, while his other hand was preparing for confrontation.

8. Johnson immediately became frightened of Broomell and his aggressive tactics. Out of fear, Johnson held her hands in the air, afraid to move.

9. Johnson informed Broomell (truthfully) that the door was locked and in a state of disrepair, and that it would take a minute to unlock and open the door. Johnson then inquired into why the officer had pulled her over. Broomell did not respond to Johnson's reasonable inquiry.

10. Despite Johnson's having already informed him of the impediment she faced in opening her car door, Broomell became irate at Johnson's inability to follow his commands quickly.

11. Infuriated with Johnson and her genuine inability to open the door quickly, Broomell deployed his baton and threatened to shatter the window if the door was not immediately opened. Broomell continued to shout profanity at Johnson throughout the entire encounter.

12. Once the broken car door was finally opened, Broomell immediately grabbed and forcefully attempted to pull Johnson from her car. Johnson still had her seat belt fastened, as required by law, which prevented her body from being pulled completely from the car. As Johnson was only pulled partially out of the car, she attempted to unfasten her seatbelt.

13. After the attempt to violently pull Johnson from the car failed due to her seatbelt being fastened, Broomell stepped back from the car, and then without warning, pulled out his Taser weapon, aimed and fired it at Johnson. The Taser's projectile barbs struck Johnson in the chest, penetrating her skin and sending a debilitating electric charge throughout her body. As a result of this first Tasering, Johnson was rendered disoriented and incapacitated.

14. Despite her compromised state, Johnson attempted to exit her car as Broomell had demanded.

15. Once Johnson achieved a standing position, Broomell fired his Taser weapon into Johnson's chest a second time, sending another terrifying and painful

electric shock throughout Johnson's body. This reinforced and worsened Johnson's incapacitation and disorientation.

16. Johnson screamed and pled for mercy, begging Broomell to stop.

17. Broomell then charged at Johnson, grabbing her and throwing her face down onto the asphalt pavement. Johnson's hands and knees were cut and bruised by this attack.

18. Broomell then drove his knee into Johnson's back, pinning her violently against the ground. Unable to move, Johnson offered no resistance.

19. While atop Johnson as alleged, Broomell fired his Taser weapon at least two more times against Johnson's back as she laid defenseless, face down on the ground. Broomell's repeated use of the Taser weapon sent horrific electric shock after electric shock throughout Johnson's body.

20. Johnson's tears and pleas for help were ignored by Broomell during this unjustified immense use of force.

21. As Johnson lay on the ground, beaten and bloody, Broomell proceeded to handcuff and arrest Johnson. At this time, another Henrico County Police officer arrived on the scene, at which point Broomell's violence against Johnson ceased.

22. Johnson and her car and belongings were thoroughly searched and, unsurprisingly, no weapons or contraband of any kind were discovered.

23. Broomell deployed the Taser weapon against Johnson no fewer than four times during his one-sided and unprovoked violent attack.

24. Broomell knew or should have known the proper use, risks and effects of using a Taser weapon. Broomell had previously received employer-provided training in

the proper use, risks and effects of the Taser. The operation manual which accompanies the purchase of any Taser, of which Broomell had actual or constructive knowledge, provided explicit warnings regarding the use of the Taser. Included in that manual were warnings that use of the Taser weapon could render the victim unable to control body movement and cause muscle contractions. Furthermore, the use of the Taser can have significant and dangerous physiological or metabolic effects on the victim.

25. Broomell was specifically trained to refrain from the repeated use of the Taser on a victim due to the potentially dangerous impacts such usage may have on the victim. The operation manual for a Taser explicitly warns against the repeated and continuous use of the Taser against a victim. Despite these clear warnings and his training, Broomell fired his Taser upon Johnson no fewer than four times.

26. The Taser operation manual also warns against firing the Taser at sensitive areas, including the face and chest. Despite these clear warnings, Broomell fired the Taser at Johnson's chest at least two times.

27. Broomell has claimed that his repeated use of the Taser against Johnson was justified due to Johnson's having not obeyed his commands. But Broomell knew or should have known that use of the Taser, as described above, incapacitated Johnson so as to render her physically unable to comply with his commands.

28. Broomell has never alleged that Johnson posed any threat against him, nor that he perceived any threat of violence against him from Johnson.

29. As a result of the repeated Taser usage, Johnson's car and clothing were left bloody. Johnson was taken to the hospital to receive treatment and to have the Taser barbs removed from her body, a direct result of the repeated use of the Taser.

30. Johnson was then retained in jail overnight after this traumatic experience.

31. As a result of the entire trauma inflicted upon Johnson by Broomell, Johnson incurred medical expenses in excess of five thousand dollars for treatment of her various physical and mental injuries.

32. As a result of the foregoing circumstances, Johnson has and continues to suffer numerous damages. These damages include, but are not limited to, post-traumatic stress disorder with depressive symptoms, anxiety, nightmares, isolation, withdrawal and a fear of driving.

## Count I: 42 U.S.C. § 1983, Excessive Force

33. Paragraphs 1-32 are incorporated herein by reference and realleged.

34. As described above, Broomell's actions constituted an unjustifiable and unreasonable use of excessive force against Johnson. Broomell's actions were in violation of Johnson's rights under the Fourth and Fourteenth Amendments to the United States Constitution and 42 U.S.C. § 1983.

35. At all times relevant to the occurrences described above, Broomell was acting within the scope of his employment as an Henrico County police officer, and under color of state law.

36. As a direct and proximate result of Broomell's intentional violent actions, Johnson was forced to endure great pain, fear, mental suffering and humiliation. Furthermore, Johnson was forced to incur substantial medical expenses as a result of the physical and mental injuries she suffered.

## Count II: Battery

37. Paragraphs 1-36 are incorporated herein by reference and realleged.

38. Broomell's actions, specifically the repeated and unprovoked use of a Taser weapon, constituted an unjustified, unwelcome and repeated offensive bodily contact.

39. The excessive force used by the defendant vastly exceeded the force which would be permitted had Broomell been acting under appropriate legal authority.

40. As a direct result of Broomell's deliberate and offensive actions, Johnson suffered both physical and mental injuries.

## Count III: Gross Negligence

41. Paragraphs 1-40 are incorporated herein by reference and realleged.

42. As an officer of the law and civil servant, Broomell owed Johnson, like all other citizens, a duty of care in the effectuation of his duties as an Henrico County police officer.

43. Broomell owed Johnson a duty to perform his law enforcement duties like a reasonably prudent officer acting under similar circumstances.

44. Broomell's violent and repeated use of the Taser weapon, in violation of recommended protocols, training and explicit warning labels, constituted a willful disregard for the safety of Johnson.

45. Broomell knew or should have known that the use of the Taser can impact the victim's mental state and ability to control movement, and as result, render her unable to obey verbal commands.

46. Despite this knowledge, as provided for in his training and Taser operational manual, Broomell used Johnson's post Tasering inability to comply with his commands as a rationale for further use of the Taser.

47. Broomell knew or should have known that the continuous and repeated use of a Taser on a victim should be avoided due to the danger such use poses.

48. Despite this knowledge as provided in his training and warning label materials, Broomell fired the Taser at Johnson at least four times, despite the existence of no threat of danger to himself or others.

49. A prudent officer in similar circumstances would not have used the Taser against Johnson at all, much less four or more times. Broomell's brutal and excessive use of the Taser constitutes a gross violation of the duty of care owed by him to Johnson.

50. Broomell's grossly negligent use of his Taser weapon, no fewer than four times against a smaller and unarmed woman who posed no threat and who had been pulled over for only a minor traffic infraction, would shock fair minded people.

51. As a direct and proximate cause of Broomell's gross negligence in the unwarranted and excessive use of force in violation of the duty of care owed, Johnson suffered immense physical and mental injuries.

WHEREFORE, plaintiff De'Ontra Johnson prays that this Court will grant her judgment against defendant Sean M. Broomell, for $500,000.00 in compensatory and

punitive damages, with additional award under 42 U.S.C. § 1988 for attorney's fees and any other litigation expenses, plus interest and all costs.

TRIAL BY JURY IS DEMANDED.

DE'ONTRA JOHNSON

By: _____
Counsel

Bradley P. Marrs
Meyer, Goergen & Marrs, P.C.
1802 Bayberry Court, Suite 200
Richmond, Virginia 23226
(804) 288-3600
(804) 288-1990 (fax)